UNITED STATESS DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN V. COSTA,<br>   Plaintiff | )<br>)<br>) |
| VS | ) CIVIL ACTION NO. 04-11732 MBB<br>) |
| SHANE M. REUL,<br>   Defendant | )<br>)<br>) |

### DEFENDANT SHANE REUL'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF FACTS

Plaintiff John Costa and his wife, Mary Costa, reside in New Bedford, Massachusetts in a two family house. Mr. Costa's parents own the house, but allow him to live in it and rent the other apartment. (Deposition of John Costa, hereinafter "Costa", pg. 20). In 2001 Mr. Costa rented the upstairs to his mother in-law, Kendra Monteiro, and her husband, Arnaldo Monteiro. Costa, pg. 22, 24. The relationship became stormy, (Costa, pg. 24-28, 34-37; Complaint, par. 6-7), eventually requiring at least eight police visits to the premises as a result of complaints by both couples. Ex. A-H.

On or about July 15, 2002 Mrs. Costa obtained a restraining order pursuant to M.G.L. c. 209A against both Mr. and Mrs. Monteiro. Complaint, par. 8. Defendant Shane Reul is a police officer for the City of New Bedford, Massachusetts. On July 16, 2002 Officer Reul and Officer Peter Beauregard served the restraining order on the Monteiros. Complaint, par. 9. The conversation between Officer Reul and the Monteiros is disputed.

The Monteiros were initially ordered to leave the premises, and did so. However, at the next hearing the order was modified to allow them to move back in. It still required them to stay away from Mrs. Costa. Costa, pg. 69, 72.

On or about August 5, 2002, the Monteiros obtained their own 209A order against both Mr. and Mrs. Costa. (Complaint par. 23) The order was served the following morning by Officer Garcelo of the New Bedford police. (Complaint par. 24; Costa, pg. 76) Mr. Costa read the restraining order and understood that a violation of the order would subject him to arrest. Costa, pg. 83-84. The families at that time remained living in the upper and lower apartments of the same house. Mr. Costa was nervous that he might be arrested. Costa, pg. 92-93.

Mr. Costa states that a little over an hour later another New Bedford police officer came to the house in response to complaints from the Monteiros. Costa, pg. 84. The officer questioned Mr. Costa, had him provide additional keys to the Monteiros, and left. Costa, pg. 84, 91. According to Mr. Costa's notes the officer was there for an hour, leaving after 11:00 a.m. Ex. I.

Mr. Costa's complaint states that at about 1:00 P.M. that day Mr. Monteiro threatened him with bodily harm. (Complaint, par. 24). He testified that at 1:23 P.M. Mr. Monteiro walked up the driveway of the house, which took him by the windows to the Costa's first floor apartment. Costa, pg. 91. At about 1:50 Mr. and Mrs. Costa drove to the New Bedford police headquarters, which is a short distance from their house, to report the crime of being threatened by Mr. Monteiro. (Complaint par. 24-25) They spoke to an officer at the front desk and were then directed to wait. Costa, pg. 104.

Officer Reul was working and on patrol. He was dispatched to headquarters to meet with a complainant. (Deposition of Officer Reul, hereinafter "Reul", pg. 68-69). Upon arriving he learned that the complainant was Mrs. Costa, and he spoke to her. Reul, pg. 72-74. She told him that Mr. Monteiro was walking down the driveway to the house, when he knocked on her window and said, "You're dead, bitch." Reul, pg. 79.

Mr. Monteiro arrived at police headquarters while Officer Reul was speaking to Mrs. Costa. Reul, pg. 73; Costa, pg. 103. To keep the parties separated, Officer Reul asked Mrs. Costa to wait in her car. Reul, pg 76. Officer Reul then spoke with Mr. Monteiro, who stated that he was walking down that driveway when Mr. Costa banged on the window and said, "You bastard. I'm going to get you." Reul, pg. 78.

Officer Reul verified that there were outstanding restraining orders against both men. Reul, pg. 91. Violation of a 209A restraining order is a crime, and 209A, sec. 6 authorizes police officers to make arrests for those violations without the need for a warrant. Officer Reul arrested both Mr. Monteiro and Mr. Costa for violations of the respective 209A orders. Reul, pg. 81-82, 88. Mr. Monteiro was arrested first. Costa, pg. 108. They were held a short time at headquarters while Officer Reul completed booking forms. They were then transported to the New Bedford jail. Costa, pg. 113, 114. Officer Reul had no further contact with Mr. Costa after booking him. Costa, pg. 113, 115.

At a later court date the Costas and the Monteiros came to a deal which included dropping all restraining orders and charges and the Costas paying the Monteiros to move out. Costa, pg. 40-45.

ARGUMENT

Mr. Costa brings four counts against Officer Reul. Count I is for unspecified violations of the Fourth and Fourteenth Amendment, presumably false arrest, actionable pursuant to 42 U.S.C. §1983. Count III is for unspecified civil rights violations actionable under the Massachusetts Civil Rights Act, M.G.L. c12, §11I. Counts V and VI are for common law false imprisonment and malicious prosecution.[1]

THERE WAS PROBABLE CAUSE TO ARREST

The existence of probable cause to arrest is determinative of all of Mr. Costa's claims. The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964); Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989). An arrest made with probable cause therefore does not give rise to a cause of action for deprivation of civil rights under 42 U.S.C. §1983. In Beck, the Court set forth the standard of probable cause to arrest:

> Whether [an] arrest was constitutionally valid depends...upon whether, at the moment the arrest was made, the officers had probable cause to make it - whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense...
>
> [Moreover,] [t]he rule of probable is a practical, nontechnical conception affording the best compromise that has been found for accommodating...often opposing interests. Requiring more would unduly hamper law enforcement.

---

[1] Mr. Costa brought two claims against the City of New Bedford, but quickly dismissed those claims.

Beck, 379 U.S. at 91; see also, Illinois v. Gates, 462 U.S. 213 (1983) (only probability and not a prima facie showing of criminal activity is the standard of probable cause). Probable cause is a relatively low threshold, "requiring only sufficiently trustworthy information to instill in a reasonable person the requisite belief of criminality. White v. Marblehead, 989 F.Supp. 345, 349 (D.Mass.1997).

In very similar language the Massachusetts courts have stated that, "Probable cause to arrest exists where the facts and circumstances in the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed." Commonwealth v. Williams, 422 Mass. 111, 119 n. 11, 661 N.E.2d 617 (1996). The state law standard has been found to substantially overlap with the constitutional requirement of "probable cause." Id.; Santiago v. Fenton, 891 F.2d at 383; Wagenmann v. Adams, 829 F.2d 196, 206 (1st Cir. 1987); Hall v. Ochs, 817 F.2d 920, 926 (1st Cir. 1987).

In this case both Mr. Costa and Mr. Monteiro were the subjects of restraining orders under M.G.L. c. 209A. M.G.L. c. 209A, §7 makes violations of a restraining order punishable by fine and/or imprisonment. Section 6 of that statute is entitled "Powers of police". The section begins with a directive to police officers to use all reasonable means to prevent further abuse when they have reason to believe that a family member has been or is in danger of being abused. It then enumerates actions that the officer *shall* take, including, (7) arresting any person a police officer "has probable cause to believe" has violated a restraining order issued pursuant to 209A. "When there are… restraining… orders…in effect, arrest *shall be the preferred response* whenever an officer…has

probable cause to believe that a person...(b) has committed a misdemeanor involving abuse as defined in section one of this chapter..." (Emphasis supplied). M.G.L. c. 209A, §1 defines abuse as including placing a household member in fear of imminent serious physical harm. Thus, M.G.L. c. 209A, § 6(7) expands the authority of police to make warrantless arrests for certain misdemeanors in the context of domestic abuse. Commonwealth v. Jacobsen, 419 Mass. 269, 272, 644 N.E.2d 213 (1995).

Mr. Monteiro came to police headquarters for the same purpose as Mrs. Costa: to report that they had been threatened in violation of a 209A restraining order. Mr. Monteiro stated that Mr. Costa had said "I'm gonna get you", and swore at him. Mrs. Costa reported that Mr. Monteiro had threatened her.[2] Each of them came to police headquarters to report what they considered to be a crime by the other. The crime in each case was a threat which placed the other party in fear of imminent physical harm.

Officer Reul was entitled to consider the situation as he knew it at the time. Mr. Monteiro was reporting a threat by Mr. Costa to physically harm him. Mr. Monteiro was at the police station to report a crime and have the police stop further abuse. The parties still resided in the same house and used the same driveway. The new restraining order, obtained the prior day by the Monteiros, had obviously added new tensions to the living arrangements. The restraining order issued the day before could only have been issued after a hearing by a district court judge, and a determination that Mr. and Mrs. Costa had abused the Monteiros, as defined by the statute. The New Bedford police had been called to the house on numerous occasions with complaints of threats between these two families.

---

[2] Mrs. Costa denies communicating the threat to Officer Reul, although the Costas came to the station to report a crime. What she said is irrelevant to the issue of probable cause to arrest Mr. Costa, which stems from what Mr. Montero told Officer Reul.

Given these facts an objectively reasonable police officer could have believed that there was probable cause to believe that the crime of violating a 209A order had occurred. Massachusetts courts have stated that police officers may rely on reports of abusive conduct that are made directly by the victim.

> ...the fact that the report of the abusive conduct came to the sergeant directly from the victim imparted "an ostensible patina of credibility" to her words. Commonwealth v. Aarhus, 387 Mass. 735, 744, 443 N.E.2d 1274 (1982), citing Nelson v. Moore, 470 F.2d 1192, 1197 (1st Cir.1972) (asserted victim of a crime is considered reliable informant even though her reliability previously has not been proven or tested), cert. denied, 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1003 (1973).

Richardson v. City of Boston, 53 Mass.App.Ct. 201, 206-207, 758 N.E.2d 29 (2001).

> Statements of victims to police are sufficiently reliable for the purpose of establishing probable cause to arrest. See Commonwealth v. Cruz, 373 Mass. 676, 684, 369 N.E.2d 996 (1977)

Paquette v. Commonwealth, 440 Mass. 121, 795 N.E.2d 521 2003). Moreover, determinations as to probable cause for the purpose of arrest can be based upon hearsay. Myers v. Commonwealth, 363 Mass. 843, 298 N.E.2d 819 (1973), citing Draper v. United States, 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327.

Section 6 not only authorizes a warrantless arrest for violations of 209A restraining orders, it provides that the officer shall arrest, and that arrest shall be the preferred response. Officer Reul's training in fact is that he had no choice but to arrest when advised of a violation of a 209A order.

Mr. Costa has alleged that Officer Reul acted out of some motive to help Mrs. Monteiro. The only supposed evidence is statements allegedly made by Officer Reul to

the effect that he knew Mrs. Monteiro and wanted to help her. Officer Reul denies making the statements or even knowing Mrs. Monteiro.

For purposes of this motion what is important is that the test for probable cause is objective, and is not measured or affected by the alleged subjective intent of the arresting officer. In Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), the court held that that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." The First Circuit has specifically rejected any inquiry into the motive of the arresting officer. United States v. McCambridge, 551 F.2d 865, 869-70 (1st Cir.1977); Bolton v. Taylor, 367 F.3d 5 (1st Cir. 2004); Holland v. City of Portland, 102 F.3d 6, 10 (1st Cir. 1996). Massachusetts also holds that the test is entirely objective. Commonwealth v. Franco, 419 Mass. 635, 639, 646 N.E.2d 749 (1995). Thus, Officer Reul's subjective motivations are irrelevant as long as there was probable cause to arrest based on an objective review of the evidence known to him at the time of the arrest.

Since there was probable cause to arrest there was no violation of any Fourth Amendment right and hence Mr. Costa has no actionable claim under 42 U.S.C. §1983.

### OFFICER REUL IS ENTITLED TO SUMMARY JUDGMENT BASED ON THE DEFENSE OF QUALIFIED GOOD FAITH IMMUNITY

The Supreme Court has recognized that governmental officials have a qualified immunity from liability for actions taken in the course of their official duties. In Harlow vs. Fitzgerald, 457 U.S. 800, 818 (1982) the Court held:

> (G)overnment officials performing discretionary functions
> generally are shielded from liability for civil damages
> insofar as their conduct does not violate clearly established
> statutory or constitutional rights of which a reasonable
> person would have known.

Moreover, the Court found that such cases could frequently be resolved on motion for summary judgment:

> (B)are allegations of police misconduct should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery... Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government <u>and permit the resolution of many insubstantial claims on summary judgment</u>. <u>Id</u>. (Emphasis supplied).

Discussing <u>Harlow</u>, the Supreme Court stated:

> ... an allegation of malice is not sufficient to defeat immunity if the Defendant acted in an objectively reasonable manner... Defendants will not be immune if, on an objective basis, it is obvious that <u>no</u> reasonable competent officer would have concluded that a warrant should issue; but <u>if officers of reasonable competence could disagree on this issue, immunity should be recognized</u>... the Harlow standard... <u>gives ample room for mistaken judgments</u>... <u>Malley vs. Briggs</u>, 457 U.S. 335 (Emphasis supplied).

The Supreme Court has subsequently reaffirmed the "objective legal reasonableness" standard of <u>Harlow</u>, and emphasized the appropriateness of Costaing summary judgment in these cases. <u>Anderson vs. Creighton</u>, 483 U.S. 635, 97 L.Ed.2d 523 (1987). Specifically, the Court rejected the argument that a Plaintiff can survive a motion for summary judgment merely by alleging violations of constitutional or statutory rights. The reasonableness of the Defendant's actions may only be determined by examining his actions in light of the particular circumstances known to him at the time of the act. For an act to fall outside the scope of immunity "the unlawfulness must be apparent "... in the light of pre-existing law". <u>Id</u>. at 5093.

Nothing in the record indicates that Officer Reul acted in a manner that would deprive him of the qualified immunity to which he is entitled to as a police officer. The doctrine of qualified immunity developed under 42 U.S.C. §1983 applies to claims brought under the Massachusetts Civil Rights Act. Duarte vs. Healy, 405 Mass. 43, 46 (1989). Therefore Officer Reul is immune from suit under either statute for alleged violation of constitutional rights.

THERE WAS NO VIOLATION OF THE MASSACHUSETTS CIVIL RIGHTS ACT

To state a claim under the Massachusetts Civil Rights Act, a Plaintiff:

> must prove that (1) his/her exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by "threats, intimidation or coercion".

See Appelton vs. Town of Hudson, 397 Mass. 8, 12, 494 N.E.2d 10, 13 (1986); Bally vs. Northeastern University, 403 Mass. 713, 717, 532 N.E.2d 49 (1989). The MCRA provides no substantive rights. Hobson v. McLean Hospital Corp., 402 Mass. 413, 418 (1988). Rather, the MCRA provides a method to redress violations of rights guaranteed by the laws of the United States or the Commonwealth of Massachusetts. Id. Therefore, as with §1983, in order to make out a claim under the MCRA, a plaintiff must first identify a right that the defendant has interfered with. Flesner v. Technical Communications Corp., 410 Mass. 805, 818 (1991); Ronsivalli v. Raytheon Co., 1993 WL 818566 (Mass. Super. 1993). Since there was probable cause to arrest there is no violation of any right that was actionable under this statute.

Mr. Costa's claim also fails since there were no threats, intimidation or coercion within the meaning of the statute. A threat "involves the intentional exertion of pressure

to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985 (1994). Intimidation "involves putting in fear for the purpose of compelling or deterring conduct." Id. Coercion is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Id. quoting Webster's New International Dictionary at 519 (2nd ed.1959). An action lies where the defendant attempts "to force that person unwillingly to do or not to do something otherwise lawful". Pheasant Ridge Assoc. vs. Burlington, 399 Mass. 771, 506 N.E.2d 1152, 1159 (1987). A direct act, not done for the purposes of coercing or intimidating the person to do or refrain from doing some lawful act, is not a violation of the MCRA. Id; Deas v. Dempsey, 403 Mass. 468, 530 N.E.2nd 1239, 1241 (1989).

Mr. Costa cannot prevail on the MCRA claim because he suffered no deprivation of rights. Moreover, there is no evidence that Officer Reul used threats, intimidation or coercion to force him to do anything he had a right not to do, or to force him to give up any rights. The act of arresting Mr. Costa, was a direct act not violative of the MCRA. It was also a privileged act, and being ordered out of the car did not violate Mr. Costa's rights. Thus, Mr. Costa cannot establish a violation of the MCRA.

THERE WAS NO FALSE IMPRISONMENT

The elements of the tort of false imprisonment are the intentional and unjustified confinement of a person directly or indirectly of which the person is conscious or harmed. 37 Massachusetts Practice §16, Nolan and Sartorio. At common law an arrest without probable cause and not pursuant to a warrant is a false arrest.

> A false arrest accompanied by an intentional confinement
> may also be the basis for an action of false

> imprisonment....Every false arrest includes false imprisonment...

37 Massachusetts Practice §16, Nolan and Sartorio, at pp. 18-19. Since an arrest for probable cause is not an unjustified confinement there can be no false imprisonment.

## THERE WAS NO MALICIOUS PROSECUTION

In order to prevail on a claim of malicious prosecution, Mr. Costa must establish that Officer Reul instituted a criminal charge against him, maliciously and without probable cause, and that said charge has been terminated in Mr. Costa's favor. Hubbard v. Beatty & Hyde, Inc., 178 N.E.2d 485, 487 (1961). Want of probable cause is the heart of the tort of malicious prosecution as even a maliciously motivated person is not liable if there is probable cause to believe the Mr. Costa guilty. Wynne vs. Rosen, 391 Mass. 797. Restatement, Second, Torts, §699A. Since there was probable cause to arrest this action must fail.

## CONCLUSION

For the reasons set forth above defendant Shane Reul is entitled to summary judgment on all counts.

Respectfully submitted
By Defendant's Attorney,
LAW OFFICES OF TIMOTHY M. BURKE

Brian Rogal, Esq., BBO #424920
160 Gould Street, Suite 111
Needham, MA 02494
(781) 455-0707

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a true copy of the foregoing document upon each other attorney of record by mailing first class postage pre-paid.

DATE: 9/9/05