```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
```

JOHN V. COSTA,
    Plaintiff,

     v.                                CIVIL ACTION NO.
                                       04-11732-MBB

SHANE M. REUL,
    Defendant.


**MEMORANDUM AND ORDER RE:**
**DEFENDANT SHANE REUL'S MOTION FOR SUMMARY JUDGMENT**
<u>**(DOCKET ENTRY # 26)**</u>

**December 6, 2005**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment (Docket Entry # 26) filed by defendant Shane Reul ("Officer Reul") pursuant to Fed. R. Civ. P. 56 ("Rule 56"). Plaintiff John Costa ("Costa") opposes the motion. (Docket Entry # 28).

The complaint alleges four counts against Officer Reul: violation of 42 U.S.C. § 1983 ("section 1983") in Count I; violation of Massachusetts General Laws chapter 12, § 11I in Count III; false imprisonment in Count V; and malicious prosecution in Count VI.[1]  Officer Reul moves for summary judgment on all counts.

---

[1] Costa brought additional counts against the City of New Bedford which have been dismissed.

STANDARD OF REVIEW

The standard of review of a summary judgment motion is well established.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Poulis-Minott v. Smith, 388 F.3d 354, 362 (1st Cir. 2004) (quoting Rule 56).  All reasonable inferences are drawn in favor of plaintiff, the nonmoving party.  See Williams v. Raytheon Company, 220 F.3d 16, 19 (1st Cir. 2000).

FACTUAL BACKGROUND

At all times material to the case at bar Costa resided with his wife, Mary Beth Costa ("Mary Costa"), in a two family house in New Bedford, Massachusetts.  In 2001 Costa rented out the upstairs portion of the house to his mother-in-law, Kendra Monteiro, and her husband, Arnaldo Monteiro.  (Docket Entry # 27, J. Costa Dep., p. 24).[2]  After the Monteiros moved in, however, the relationship between the couples soured.  (Docket Entry # 27, J. Costa Dep., pp. 34-37).  Tensions escalated to the point where the Monteiros made numerous threats to commit bodily injury on Costa and his wife.  (Docket Entry # 27, J. Costa Dep., pp. 34-

---

[2] "J. Costa Dep." refers to the deposition of Costa.

2

37).

At all times material to the case at bar Officer Reul was a duly appointed and acting member of the New Bedford Police Department. Officer Reul and the Monteiros are acquaintances. (Docket Entry # 28, Ex. H).[3] On July 16, 2002, Officer Reul and Officer Peter Beauregard served a Massachusetts General Laws chapter 209A restraining order ("chapter 209A order") on the Monteiros. (Docket Entry # 28, Ex. E).

Minutes after the chapter 209A order was served, Costa observed Officer Reul leave with Kendra Monteiro following in her automobile. (Docket Entry # 28, Ex. E). Suspecting that Officer Reul and the Monteiros were on their way to the courthouse to have the restraining order vacated, Costa also drove to the courthouse where he discovered that Officer Reul and Kendra Monteiro had in fact unsuccessfully attempted to vacate the restraining order. (Docket Entry # 28, Ex. E).

On August 6, 2002, Costa and his wife were served with a chapter 209A order obtained by the Monteiros. (Docket Entry # 27, J. Costa Dep., p. 76). Later that same day, Costa was threatened with bodily harm by Arnaldo Monteiro and the Costas drove to the New Bedford police station to report the crime. (Docket Entry # 28, Ex. X). At the station, the Costas were

---

[3] Although Officer Reul denies knowing the Monteiros before the day he served the restraining order on them, this court is obliged to resolve this issue in Costa's favor.

advised to wait. (Docket Entry # 28, Ex. V). While waiting, Costa observed Arnaldo Monteiro enter the rear of the police station. (Docket Entry # 28, Ex. W). After about an hour of waiting, Officer Reul directed Costa inside the police station whereupon he was arrested for violating the August 6th chapter 209A order. (Docket Entry # 28, Ex. Z). Arnaldo Monteiro was also placed in custody. (Docket Entry # 27, J. Costa Dep., p. 108). Costa was never given an opportunity to explain his side of the story and spent the night in a jail cell. (Docket Entry # 27, J. Costa Dep., p. 114).

   Viewing the record in Costa's favor, as required, Officer Reul's incident report documenting the arrest contains discrepancies including listing Mary Costa and not Costa as the complainant (Docket Entry # 28, Ex. J), claiming Arnaldo Monteiro threatened Mary Costa, which Costa denies occurred and in any event no statement was taken from either Mary Costa or Costa (Docket Entry # 28, Ex. K), and failing to note that Costa was actually in the police station when he was arrested. (Docket Entry # 28, Ex. O). Officer Reul also acknowledges that the protocol for attending to a domestic abuse situation would be to interview "whoever's there" in order to "get information." (Docket Entry # 28, Ex. P). Officer Reul further concedes that, "any arresting officer who's arresting cross-complainants must submit a detailed written report in addition to the incident

report, setting forth the grounds for dual arrest."  (Docket Entry # 28, Ex. U).  Officer Reul admits that he "might not have" filed such a written report.  (Docket Entry # 28, Ex. U).  As a result of Officer Reul's actions, Costa purportedly suffers emotional distress.  (Docket Entry # 27, J. Costa Dep., p. 115).

DISCUSSION

In seeking summary judgment, Officer Reul argues that there was probable cause to arrest Costa and that the existence of probable cause is determinative of all of Costa's claims. Alternatively, Officer Reul argues that he is entitled to summary judgment on the federal and state constitutional claims based on the defense of qualified immunity.

Turning first to the argument that Officer Reul had probable cause to arrest, it is well settled that in section 1983 cases:

> whether [the] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it--whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.

Beck v. Ohio, 379 U.S. 89, 91 (1964) (quoting Brinegar v. United States, 338 U.S. 160, 175-176 (1949)).  "[P]robable cause is a reasonable ground for belief of guilt" and "this means less than evidence which would justify condemnation or conviction."  United

States v. Bashorun, 225 F.3d 9, 17 (1st Cir. 2000) (citations, internal quotation marks and brackets omitted). "[W]hether or not probable cause exists in any given case invariably depends on the particular facts and circumstances of that case, a question to be resolved by the trier of fact." B.C.R. Transport Co., Inc. v. Fontaine, et al., 727 F.2d 7, 10 (1st Cir. 1984).

Officer Reul relies entirely on the argument that Arnaldo Monteiro's allegation that Costa violated the chapter 209A restraining order against him is sufficient to establish probable cause to arrest Costa. Officer Reul relies upon Richardson v. City of Boston, 758 N.E.2d 629, 633 (Mass.App.Ct. 2001), for the proposition that a report made directly from the victim impart[s] an "'ostensible patina of credibility'" to the allegations. Although the victim's statements were taken as true in Richardson, Officer Reul failed to point out in the supporting memorandum (Docket Entry # 27) that there were additional factors in Richardson which contributed to a finding of probable cause. Those additional factors included that, "the [victim's] bruised condition tended to corroborate her story" and "the [victim's] fear of imminent harm was evidenced by her claim that she had moved from her home and was living with her sister." Richardson v. City of Boston, 758 N.E.2d at 633.

Viewing the facts and drawing all reasonable inferences in Costa's favor and given the relatively low threshold of

6

information required to show probable cause, Costa establishes that genuine issues of material fact exist from which a jury could find that Officer Reul made the arrest without probable cause.  See B.C.R. Transport Co., Inc. v. Fontaine, 727 F.2d at 10 ("even though [police officer] may have been acting on information provided by an alleged victim of a crime, this fact did not preclude the jury from finding that probable cause did not exist in this case").  Hence, the section 1983 claim survives summary judgment.

The purpose of the Massachusetts Civil Rights Act ("MCRA") is to provide under state law a remedy "coextensive with 42 U.S.C. § 1983 except that the Federal statute requires State action whereas its State counterpart does not."  DeToledo v. County of Suffolk, 379 F.Supp.2d 138, 145 (1st Cir. 2005) (quoting Batchelder v. Allied Stores Corp., 473 N.E.2d 1128 (Mass. 1985)).  Thus, in order "to seek redress through [the MCRA as under its Federal analog, 42 U.S.C.] § 1983 . . . a plaintiff must assert the violation of a federal [or State] *right,* not merely a violation of federal [or State] law."  Id. (quoting Perkins v. Commonwealth, 752 N.E.2d 761 (Mass.App.Ct. 2001)).  Officer Reul argues that, because there was probable cause to arrest, there was no violation of Costa's rights and hence the MCRA claim must fail.  Costa, however, establishes sufficient genuine issues of material fact so that a jury could find that no

probable cause existed.

Officer Reul further argues that the MCRA claim must fail because the interference alleged was not by "threats, intimidation or coercion" within the meaning of the statute.  To the contrary, however, Officer Reul's conduct on the day of the arrest, including profanity, threats and grabbing and pulling Costa (Docket Entry # 27, Ex. X), suffice to create a genuine issue of fact as to the use of threats, intimidation or coercion within the meaning of the MCRA.  See generally Planned Parenthood v. Blake, 631 N.E.2d 985, 990-991 (Mass. 1994).

Likewise, Costa's false imprisonment claim rests on whether there was probable cause to arrest.  "Because there was no probable cause for [the plaintiff's] arrest, it follows that [the defendant's] actions constituted false imprisonment as a matter of law."  Daley v. Harber, 234 F.Supp.2d 27, 32 (D.Mass. 2002).  Because the issue of probable cause is one for the jury, summary judgment on the false imprisonment claim is therefore improper.

Finally, in order to recover for malicious prosecution, Massachusetts requires a plaintiff to prove "that [the defendant] instituted criminal proceedings against [him] with malice and without probable cause and that those proceedings terminated in [his] favor."  Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999).  Given the existence of genuine issues of material fact as to the presence of probable cause, summary judgment is not

warranted on the malicious prosecution claim.

In the alternative, Officer Reul argues that he is entitled to the defense of qualified immunity for the constitutional claims as a matter of law. "Government officials performing discretionary functions are generally shielded from civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Unlike probable cause, "the question of immunity is for the court." Lewis v. Kendrick, 944 F.2d 949, 953 (1st Cir. 1991) (quoting Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987)). In a summary judgment posture this court "must credit the plaintiff's version of defendant's actions to the extent that plaintiff has appropriately supported his version." Sheehy v. Town of Plymouth, 191 F.3d 15, 22 (1st Cir. 1999) (internal quotation marks omitted). It is well settled that, "bare allegations of malice should not suffice to subject government officials either to the costs of trial or the burdens of broad-reaching discovery." Harlow v. Fitzgerald, 457 U.S. at 816. Qualified immunity analysis for the MCRA claim parallels that of the section 1983 claim inasmuch as "The Supreme Judicial Court of Massachusetts has held that it is 'consistent with the intent of the Legislature in enacting the Civil Rights Act to adopt thereunder the standard of immunity for public officials

developed under § 1983.'" Duca v. Martins, 941 F.Supp. 1281, 1294 (D.Mass. 1996) (quoting Duarte v. Healy, 537 N.E.2d 1230, 1232 (Mass. 1989)).

The First Circuit employs a three part test to assess the presence of qualified immunity. That test determines: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004).

As for the first two parts of the qualified immunity analysis, "It has been clearly established for a very long time that the Fourth Amendment requires that arrests be based on probable cause." Abreu-Guzman v. Ford, 241 F.3d 69, 71 (1st Cir. 2001) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)); accord Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992); see also Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 5 (1st Cir. 1997) (noting lack of dispute "that at the time of Vargas' arrest, clearly established Fourth Amendment law required that the defendants have probable cause to support Vargas' warrantless arrest").

The inquiry therefore distills into "whether an objectively reasonable officer would have understood that the arrest of [the

plaintiff] violated these clearly established constitutional rights." Abreu-Guzman v. Ford, 241 F.3d at 73. More specifically, the inquiry reduces to whether a reasonable police officer, standing in the shoes of Officer Reul, would have known that arresting Costa for violating the August 6th chapter 209A restraining order would contravene clearly established law "under all the attendant circumstances." Iacobucci v. Boulter, 193 F.3d 14, 22 (1st Cir. 1999). The inquiry proceeds "in light of the commonly held understanding that probable cause exists only if the facts and circumstances within the arresting officer's knowledge 'are sufficient to lead an ordinarily prudent officer to conclude that an offense has been, is being, or is about to be committed.'" Iacobucci v. Boulter, 193 F.3d at 22.

Given the circumstances taken as true in favor of Costa, an issue of material fact exists as to whether Officer Reul was objectively unreasonable in arresting Costa. As the test for qualified immunity is an objective one, whether or not Officer Reul was motivated by his personal friendship with the Monteiros is immaterial. See Beckett v. Department of Corrections of the State of Delaware, 981 F.Supp. 319, 331 (D.Del. 1997) ("whether [the warden's] motive was race, his personal friendship with [the applicant], or mere complacence, is not for the Court to inquire when considering a claim of qualified immunity"). Viewing the facts and drawing all reasonable inferences in Costa's favor, a

finder of fact could conclude that Officer Reul submitted an intentionally inaccurate incident report and acted contrary to the requirement of submitting a detailed written report when making a dual arrest.  A reasonable police officer would know that submitting an inaccurate or false incident report under such circumstances to justify the arrest would violate clearly established constitutional rights.  See Landrigan v. City of Warwick, 628 F.2d 736, 745 (1st Cir. 1980) ("If action is subsequently taken on the basis of that [false] report . . . plaintiff's constitutional rights may well then be violated").  Accordingly, viewed objectively, Officer Reul is not entitled at this juncture to qualified immunity from damages resulting from the alleged violations of section 1983 or the MCRA.

## CONCLUSION

In accordance with the foregoing discussion, Officer Reul's motion for summary judgment (Docket Entry # 26) is **DENIED**.  Inasmuch as the deadline for filing dispositive motions has now passed, this court will conduct a status conference on January 20, 2006, at 10:00 a.m. in order to set a trial date.

                                           /s/ Marianne B. Bowler
                                           **MARIANNE B. BOWLER**
                                           United States Magistrate Judge